UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GLENN R. EDWARDS, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:20-cv-00877-MTS |
| ) | |
| THE TRAVELERS COMPANIES, INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Travelers Casualty Insurance Company and The Phoenix Insurance Company's Motion to Dismiss, Doc. [42]. For the reasons discussed herein, the Court will grant the Motion and dismiss this case.

**I.   Background**

This case is one of the many disputes involving insurance coverage for certain economic losses and ill effects to businesses attributable to SARS-CoV-2, the virus that causes coronavirus disease or COVID-19, and the pandemic. Plaintiffs Glenn R. Edwards, Inc. and Daniel A. Narup DMD, LLC are two businesses that provide dental services in St. Louis County, Missouri. Plaintiffs allege that in March of 2020, they both "shut down their practices" in response to recommendations of the Centers for Disease Control, the American Dental Association, and the Missouri Dental Board. Though both businesses paused their practice, there "never [was] a governmental order in Missouri mandating that dental practices close because of the COVID-19 pandemic." Doc. [32] ¶ 47. Both Plaintiffs had insurance policies purchased from or issued by Defendants, Travelers Casualty Insurance Company and The Phoenix Insurance Company, and both Plaintiffs submitted claims in June 2020 for loss of business income and necessary extra

expense incurred.  Docs. [32-3], [32-4].  Plaintiffs allege that Defendants have refused to pay Plaintiffs though Plaintiffs experienced a "physical loss of" their insured properties due to the COVID-19 pandemic.  Doc. [32] ¶ 10.

In light of Defendants' refusal to pay, Plaintiffs brought this putative class action suit against them.  An Amended Complaint brings six counts: Business Income Breach of Contract, Count I; Breach of The Implied Covenant of Good Faith and Fair Dealing Applicable to Business Income, Count II; Declaratory Relief Applicable to Business Income, Count III; Extra Expense Breach of Contract, Count IV; Breach of The Implied Covenant of Good Faith and Fair Dealing Applicable to Extra Expense, Count V; and Declaratory Relief Applicable to Extra Expense, Count VI.  Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing the Amended Complaint fails to state a claim upon which relief can be granted.

**II.     Standard**

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  If a pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it.  *See* Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  The factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  If a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must

be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

When ruling on a motion to dismiss, the Court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and must grant all reasonable inferences in its favor, *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677–78. Indeed, "[c]ourts should dismiss complaints based on 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555).

**III.    Discussion**

    *a.    The Relevant Policy Provisions*

Several provisions of the policies are at issue here. First, the Businessowners Property Coverage Special Form provides for Business Income and Extra Expense coverage that requires Defendants to

> pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Doc. [32] ¶¶ 84–85.

The policies also covered Extra Expense. The policies state:

> (1) Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

- 3 -

    (2) We will pay Extra Expense (other than the expense to repair or replace property) to:

        a. Avoid or minimize the "suspension" of business and to continue "operations" at the described premises . . .

        b. Minimize the "suspension" of business if you cannot continue "operations".

    (3) We will also pay Extra Expenses (including Expediting Expenses) to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under Paragraph a. Business Income, above.

*Id.* ¶¶ 98–99.

Besides the coverage provisions, the policies also contained relevant endorsements and exclusions. The endorsement setting out the Exclusion of Loss Due to Virus or Bacteria states:

    A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense, rental value or action of civil authority.

    B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

    C. With respect to any loss or damage subject to the exclusion in Paragraph B., such exclusion supersedes any exclusion relating to "pollutants".

    D. The terms of the exclusion in Paragraph B., or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

*Id.* ¶ 110.

    b.  *Plaintiffs have not alleged a direct physical loss of or damage to their property.*

  The policies at issue only cover "actual loss of Business Income" due to the "necessary 'suspension' of 'operations' during the 'period of restoration'" and only if the suspension was "caused by direct physical loss of or damage to property at the described premises."  *Id.* ¶¶ 84–85.  The policies do not define "loss" or "damage" as used in the phrase "direct physical loss of or damage to property."  Plaintiffs allege that they had a "physical loss of their insured property arising from the COVID-19 pandemic."  *Id.* ¶ 10.  They argue that they "suffered a 'loss of' their properties when they were unable to use them for the practice of dentistry and their patients suffered a loss of the properties when they were unable to access them for dental services."  *Id.* ¶ 11.  Since it is a legal conclusion that Plaintiffs suffered a loss of their properties, the Court will not assume such allegations are true, but the Court will determine that legal conclusion based on Plaintiffs' pleaded facts.

  Under Missouri law, a court interpreting an insurance policy should "give[] the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance."  *Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245, 247 (Mo. banc 2019) (quoting *Doe Run Res. Corp. v. Am. Guar. & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. banc 2017)).  In addition, courts "should not interpret policy provisions in isolation but rather evaluate policies as a whole."  *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc. 2009).  When an insurance policy is "clear and unambiguous," the court must enforce the policy as written.  *Seaton*, 574 S.W.3d at 247.

  The Court concludes that, under the plain meaning of the policy language and evaluating the policy as a whole, Plaintiffs' decisions to close their dental practices did not constitute a "direct physical loss of" their property.  Nothing physical happened to Plaintiffs' properties.

Rather, there only was a change in circumstances. The coronavirus pandemic and the associated opinions of industry groups and the public may have caused demand for Plaintiffs' services to plummet, but the transitory reduction of the properties' functionality, based on no direct physical occurrence, does not amount to a loss of their properties under the plain meaning of the policies.

In line with many other courts before it, this Court concludes that Plaintiffs did not plead a "direct physical loss of" its property because it did not plead any "physical alteration of property, or, put another way, a tangible impact that physically alter[ed] property." *See Zwillo V, Corp. v. Lexington Ins. Co.*, 504 F. Supp. 3d 1034, 1039 (W.D. Mo. 2020), *appeal dismissed*, No. 21-1015, 2021 WL 2792962 (8th Cir. Mar. 18, 2021); *accord Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (applying Iowa law and finding no coverage for COVID-19 business losses under policy language covering suspension of operations "caused by direct 'loss' to property"). If the changes in circumstance alone caused by the pandemic qualified as a direct physical loss of the property, then coverage would be "established *whenever* property cannot be used for its intended purpose." *Oral Surgeons*, 2 F.4th at 1144 (quoting *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) (interpreting, under Minnesota law, that two-week long loss of power did not qualify as "direct physical loss of or damage to property" despite causing a shutdown of manufacturing operations)).

Plaintiffs argue that the "of" in "direct physical loss *of* or damage to" is "critical" because it shows that it is not the property's loss that is covered but the insured's loss. Doc. [52] at 1–2, 12–13. Thus, since Plaintiffs were unable to use their properties for the practice of dentistry, they suffered a "loss of" their properties during that time. The Court finds this reading too strained and against the policy's plain meaning. In doing so, this Court joins numerous others in

finding no coverage under identical language. *See, e.g.*, *Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*, 511 F. Supp. 3d 978, 982 (E.D. Mo. 2021) ("The complaint does not allege any facts demonstrating that Ballas sustained a 'direct physical loss of or damage to property' resulting from a 'covered cause of loss,' which is required for coverage under the Business Income and Extra Expense provision."); *United Hebrew Congregation of St. Louis v. Selective Ins. Co. of Am.*, No. 4:20-cv-892-HEA, 2021 WL 2823213, at *1, *3 (E.D. Mo. July 7, 2021) (dismissing claims despite same argument by plaintiff that *of* in loss of or damage to is critical); *Monday Rests. LLC v. Intrepid Ins. Co.*, No. 4:20-cv-1015-SNLJ, 2021 WL 2222692, at *3 (E.D. Mo. June 2, 2021) ("Plaintiffs have not alleged a 'direct physical loss of or damage to property.'").

Besides the ordinary meaning of the coverage provision, other provisions of the policies also demonstrate that Plaintiffs' alleged inability to use their insured property in a typical manner did not amount to a direct physical loss of property. *See Ritchie*, 307 S.W.3d at 135 (instructing courts to "evaluate policies as a whole").  For example, the polices provide that if a policy holder has coverage for Business Income and Extra Expense—like Plaintiffs do here—then the policy holder can "*extend* that insurance to apply to" loss of Business Income and "reasonable and necessary Extra Expense" incurred if "civil authorities prohibit[] access to the described premises due to a homicide or suicide occurring at such premises."  Doc. [32-1] at 26 (emphasis added).  Under Plaintiff's proposed interpretation of "direct physical loss of" property, this provision would be surplusage.  Under Plaintiffs' reading, they "suffered a 'loss of' their properties when they were unable to use them for the practice of dentistry."  Doc. [32] ¶ 11; *accord id.* ¶ 91 ("The COVID-19 pandemic caused a direct physical loss of Plaintiffs' Covered Property . . . by denying Plaintiffs the direct ability to physically access and use the property in

the normal fashion in their business."). But if the mere inability to use the properties for the practice of dentistry counted as a "direct physical loss of" the properties, then it would be unnecessary to "extend" the Business Income and Extra Expense insurance to apply to situations where the police prohibited physical access to or use of the property in the normal fashion.

The policies have a similar provision that allows the insured to "extend" the Business Income and Extra Expense insurance "to apply to the loss of Business Income or Extra Expense caused by the interruption of" utility services, like water or power, at the insured premises. Doc. [32-1] at 30. But losing water or power at their offices surely would have left Plaintiffs "unable to use [them] for the practice of dentistry." *See* Doc. [32] ¶ 11.[1] And if being unable to use the property for the practice of dentistry already constituted a "loss of" the property, this provision "extend[ing]" the Business Income and Extra Expense insurance to utility failures also would be unnecessary.

Since Plaintiffs alleged no direct physical loss of their property, they were not entitled to Business Income or Extra Expense under the polices' provisions. Thus, the Court will dismiss Count I (Business Income Breach of Contract), Count III (Declaratory Relief Applicable to Business Income), Count IV (Extra Expense Breach of Contract), and Count VI (Declaratory Relief Applicable to Extra Expense).

      c.     *Defendants did not breach the implied covenant of good faith and fair dealing.*

Under Missouri law, a duty of good faith and fair dealing is implied in every contract. *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.*, 464 S.W.3d 177, 185 (Mo. banc 2015). "A breach of the covenant of good faith and fair dealing occurs where one party 'exercise[s] a judgment conferred by the express terms of the agreement in such a manner

---

[1] While it could have been unhygienic to perform routine dental services at the height of the pandemic, it certainly would be unhygienic to perform routine dental services at a dental office with no water or power.

- 8 -

as to evade the spirit of the transaction or so as to deny [the other party] the expected benefit of the contract.'" *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1112 (8th Cir. 2006) (alterations in original) (quoting *Mo. Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 46 (Mo. Ct. App. 2002)); *accord Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 190 (Mo. Ct. App. 2017). The purpose of a good faith and fair dealing cause of action is "to prevent opportunistic behavior where one party exploits changing economic conditions to the detriment of the other party." *Rock Port Mkt.*, 532 S.W.3d at 188 (quoting *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012).

The Court has reviewed the Amended Complaint in its entirety along with Plaintiffs' opposition briefing. Nowhere has the Court found allegations that the express terms of the policies conferred a judgment on Defendants that Defendants acted on in a manner evading the spirit of the policies or denying the expected benefit of the policies. To the extent Plaintiffs' allegation is that Defendants exercised a judgment in denying them coverage for their claim, such allegation would not be a proper claim for a breach of the duty of good faith and fair dealing because "an insurance company's denial of coverage itself is actionable only as a breach of contract and, where appropriate, a claim for vexatious refusal to pay." *Robert E. Levy, D.M.D., LLC v. Hartford Fin. Servs. Grp. Inc.*, No. 4:20-cv-00643-SRC, 2021 WL 598818, at *12 (E.D. Mo. Feb. 16, 2021) (quoting *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 69 (Mo. banc 2000)) (dismissing dental office's breach of covenant of good faith and fair dealing claims relevant to COVID-19 business loss coverage). As such, the Court will dismiss Count II and Count V.

  d.  *The Exclusion of Loss Due to Virus or Bacteria would apply even if there were a direct physical loss of property.*

Even if Plaintiffs' theory that an inability to physically access and use the property in the normal fashion constitutes a "direct physical loss of" the property under the policies, the endorsement entitled "Exclusion of Loss Due to Virus or Bacteria" would apply. Plaintiffs argue that the COVID-19 pandemic caused their "losses," not the coronavirus, and, therefore, the Virus Exclusion does not apply to their "loss and damage." Doc. [32] ¶ 106. Given that COVID-19 is nothing more than disease caused by the coronavirus, their argument is untenable.

## CONCLUSION

Because the Court concludes that Plaintiffs did not plead a direct physical loss of or damage to their properties, their claims fail and will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, Doc. [42], is **GRANTED**.

**IT IS FURTHER ORDERED** that all other remaining Motions are **DENIED** as moot.

A separate Order of Dismissal will be filed contemporaneously with this Memorandum and Order.

Dated this 11th day of August, 2021.

                _____
                MATTHEW T. SCHELP
                UNITED STATES DISTRICT JUDGE